**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

**SANDRA PHILLIPS**                                                                                **PLAINTIFF**

**VS.**                        **CASE NO. 5:11CV00185 HDY**

**MICHAEL J. ASTRUE, Commissioner,
    Social Security Administration**                                    **DEFENDANT**

**ORDER**

Plaintiff has appealed the final decision of the Commissioner of the Social Security Administration to deny her claim for supplemental security income (SSI). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. 42 U.S.C. § 405(g).

This Court's review function is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusions." *Id*. The Court may not reverse merely because evidence would have supported a contrary outcome. *See id*.

The only disputed issue in this case is whether plaintiff is disabled within the meaning of the Social Security Act. Plaintiff bears the burden of establishing a physical or mental impairment that will result in death, or that has lasted twelve months or more and has prevented her from engaging in any substantial gainful activity. 42 U.S.C. § 423 (d)(1)(A); 42 U.S.C. § 1382c(3)(A) and (B).

Plaintiff filed for SSI on March 18, 2008, alleging she had been disabled since December 1, 2000. Her application was denied initially and upon reconsideration, and she requested a hearing before an administrative law judge (ALJ).

Plaintiff was 45 years old at the time of the hearing, which was conducted on December 1, 2009. (Tr. 24-57). The plaintiff and a vocational expert testified at the hearing. The plaintiff testified that she had an eighth grade education, and could read, write, and do simple math. She stated that she had received her certification as a nursing assistant. She said she last worked in 2006 or 2007 as a cashier at McDonald's, but the job lasted only a month due to complications with her high blood pressure. Prior to that job, the plaintiff worked for seven to eight years, on and off, as a cashier/host at Pizza Hut. She stated she is prevented from working due to her blood pressure, which causes problems in her back, legs, and knees, and also causes vision problems. She stated she had pain "all over my body." (Tr. 36). The plaintiff testified to undergoing a colostomy in August of 2009, with a reversal process scheduled for February of 2010. Upon questioning by her attorney, the plaintiff stated she had fibromyalgia, and has polyps in her stomach. The polyps cause daily pain. She stated she has the mental problems of manic depression and bi-polar condition, requiring treatment in the past and resulting in ongoing care, including the use of Thorazine, amitriptyline, and Xanax. She also stated she had cancer in the past, and she has arthritis, which requires her to take anti-inflammatory medications. She testified to having had asthma for about 12-13 years. She stated she takes Lorcet 2-3 times a day, and also is prescribed hydrochlorot, alprazolam, cetirizine, zyrtec, amlodipine, loratidine, and citalopram. She stated that the medications cause her to be in a "zombie mood." (Tr. 45). As for her daily routine, the plaintiff testified to sleeping poorly and awakening around 10 a.m., then staying in her room all day due to

the pain, spending about 4-5 hours on the computer. She stated she had been following this routine for 8-9 months. She stated she could sit for 15 minutes before needing to move around, and that she could not use her arms to reach and hold things. She said she could walk a block before needing "a breather." (Tr. 48). She testified to troubles with bending, stooping, and squatting. The ALJ asked the vocational expert a hypothetical question, assuming an individual who could lift and carry 20 pounds occasionally and 10 pounds frequently, could stand and walk six hours, could sit for six hours, and wh could push and pull the same amounts as she could lift and carry. Such a person could not perform the cashier/waitress job previously performed by the plaintiff. According to the vocational expert, there were, however, other jobs such a person could perform. The ALJ asked another hypothetical question, assuming an individual who could lift and carry 10 pounds occasionally, and less than 10 pounds frequently, could stand and walk no more than two hours, sit for six hours, and would be limited to simple tasks that could be learned by rote, with limited interpersonal contact and no contact with the public. The vocational expert opined that jobs existed for such a person. For example, the witness cited the jobs of lamp-shade assembler, watch crystal attacher, and escort vehicle driver. The vocational expert further opined that if such an individual could not reach overhead then such a limitation would preclude all work.

On February 26, 2010, the ALJ found the plaintiff was not disabled as defined in the Social Security Act. (Tr. 14-19). The ALJ specifically found the medical evidence established the plaintiff has the following severe impairments: fibromyalgia, adenocarcinoma, hypertension, chronic gastritis, degenerative joint disease of the knees, and asthma. The ALJ found the plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found the plaintiff's testimony

was not fully credible. The ALJ found the plaintiff has the residual functional capacity to perform the full range of sedentary exertional activity. The ALJ determined the plaintiff could not perform her past relevant work. The ALJ found the plaintiff was not disabled, citing the Medical-Vocational Guidelines. The ALJ, citing vocational expert testimony, found the plaintiff was capable of performing work, including the jobs of production assembler and escort vehicle driver. Thus, the ALJ concluded the plaintiff was not disabled. The Appeals Council, on May 19, 2011, denied plaintiff's request for review (Tr. 1-3), and plaintiff subsequently filed suit with this Court.

The ALJ considered her impairments by way of the familiar five-step sequential evaluation process.

The first step involves a determination of whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(b). If the claimant is, benefits are denied; if not, the evaluation goes to the next step.

Step two involves a determination, based solely on the medical evidence, of whether the claimant has a severe impairment or combination of impairments. *Id.*, § 404.1520©); *see* 20 C.F.R. § 404.1526. If not, benefits are denied; if so, the evaluation proceeds to the next step.

Step three involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id.*, § 404.1520(d). If so, benefits are awarded; if not, the evaluation continues.

Step four involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform past work. *Id.*, § 404.1520(e). If so, benefits are denied; if not, the evaluation continues.

Step five involves a determination of whether the claimant is able to perform other

substantial and gainful work within the economy, given claimant's age, education and work experience. *Id.*, § 404.1520(f). If so, benefits are denied; if not, benefits are awarded.

In support of her request for reversal, plaintiff asserts that the ALJ erred by: (1) failing to properly assess her residual functional capacity (RFC); (2) failing to accord adequate weight to the opinion of treating physicians; (3) failing to evaluate or explain the weight accorded to the medical evidence of record; and (4) failing to properly frame the hypothetical question and, as a result, finding that plaintiff could perform work in the national economy. *Plaintiff's brief at 2-13*.

We find merit in the plaintiff's claims for relief, and find that the case must be reversed.

The RFC as determined by the ALJ was based, in part, on the discounting of the plaintiff's credibility. In so doing, the ALJ utilized the factors set forth in *Polaski v. Heckler*, 751 F.2d 943 (8th Cir. 1984). Included in the relevant factors is the adverse side effects of medications. In his opinion, the ALJ noted the plaintiff "takes potent pain medication for her fibromyalgia and joint pain.[1] If it does not control her pain, it is not clear why she continues to use it rather than request an alternative for her pain. She has reported side effects with Lyrica." The medical records show the plaintiff to have taken numerous medications for her chronic pain. While the ALJ seems to fault the plaintiff for failing to find the right medication(s), it is plausible that the plaintiff has received some benefit from the prescribed drugs but not received total relief. We also note that the plaintiff's testimony was that the side effects from several of the medications, not solely Lyrica, resulted in a "zombie" mental state. The medical records showing a diagnosis of chronic pain, coupled with the numerous medications taken for pain, were not given adequate weight by the ALJ. It is not enough

---

[1] At the hearing, the plaintiff testified to taking twelve prescription medications. Treating physician Chambers consistently prescribed Lorcet and Xanax, and often prescribed other medications, such as Thorazin.

5

for the ALJ to simply opine that the plaintiff should have sought alternative treatment rather than take the medications prescribed by her treating physicians. As a result, the ALJ's RFC conclusion that the plaintiff could perform the full range of sedentary work was not supported by substantial evidence.      In addition, the ALJ erred in finding that the Medical-Vocational Guidelines directed a finding that the plaintiff was not disabled. (Tr. 17, 19). While the ALJ also mentions the testimony of the vocational expert, it seems that the ALJ is relying upon the Guidelines. In this instance, where substantial evidence supports a finding that the plaintiff deals with the nonexertional impairment of pain, it is error to rely on the Guidelines. On remand, the ALJ is directed to call a vocational expert to testify on the issue of whether there are jobs which the plaintiff can perform.

For the foregoing reasons, the case must be remanded for further proceedings. If a consultative examination is necessary to assess the degree to which plaintiff's pain and side effects affect her ability to function in the work place, then the ALJ should direct that it take place. In addition, the ALJ should address the opinion of treating physician Dr. David Chambers. (Tr. 1073-74). Dr. Chambers opined that the plaintiff's "pain and medication does not allow her to perform activities of daily living or hold a job." (Tr. 1074). Although this opinion was rendered after the ALJ's February 26, 2010, ruling, Dr. Chambers noted that the opinion was based upon his experience, treatment and examination of the plaintiff on or before December 1, 2009.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is reversed and remanded. This remand is a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO ORDERED this  8   day of August, 2012.

_____
UNITED STATES MAGISTRATE JUDGE